UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAVETRONIX LLC, an Idaho limited liability company; David Arnold; and Michael Jensen,<br><br>        Plaintiffs,<br>   v.<br><br>Douglas Swenson, Conrad Myers, individually but not in his capacity as Trustee of the DBSI Liquidating Trust; John D. Foster, Thomas Var Reeve, Charles Hassard, Paul Judge, Gary Bringhurst, Walter Mott, Jeremy Swenson, John Mayeron, William Rich, and John Does 1through 20,<br>        Defendants. | Case No. 4:12-cv-00244-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a Motion for a More Definitive Statement (Dkt. 24) filed by Defendants John Foster and Walter Mott. Foster and Mott move for a more definite statement regarding the claims and allegations against each of them. For the reasons set forth below, the Court will grant the motion with respect to Defendant Mott, but deny the motion with respect to Defendant Foster.

## BACKGROUND

This case stems from the collapse of DBSI, Inc., a sprawling real estate investment empire, involving hundreds of corporations and properties, but dominated and controlled

by Defendant Douglas Swenson and his "cabal of insiders." In 2008, during the midst of the economic downturn, the various DBSI entities filed for bankruptcy in the District of Delaware. A plan of reorganization was confirmed in October of 2010. The Plan created four trusts including the DBSI Estate Litigation Trust and the DBSI Private Actions Trust.

Immediately following the Confirmation of the Plan, on November 5, 2010, the Trustee of the DBSI Estate Litigation Trust and the DBSI Private Actions Trust filed a RICO claim against Swenson and the other DBSI Insiders who helped run the various DBSI entities. The Trustee's RICO complaint is massive. It sets forth in painstaking detail the nature of a fraudulent scheme used to "bilk" investors, which allegedly infected DBSI starting about 2004. Stated in the simplest terms possible, the Trustee's complaint alleges DBSI became detached from "any rational economic moorings, and ultimately became nothing more than the instrument of the Insiders' elaborate pyramid or 'Ponzi' scheme to defraud Investors." *Litigation Trustee's RICO Complaint*, Case No. 1:12-cv-00224-EJL-MHW, ¶ 33, Dkt. 1. Accepting the allegations as true, it does appear that aspects of DBSI's investment model did resemble a Ponzi scheme, in that DBSI purportedly paid off old investors by raising money through new ones.

According to one of the Bankruptcy Trustees, Plaintiff Wavetronix, LLC was one of several technology development companies that benefited from funds bilked from DBSI's investors. From 2001 through 2006, Wavetronix borrowed more than $21 million dollars from Stellar Technologies, LLC. The loans, which were accomplished through transfers to Wavetronix from various DBSI companies, were memorialized through

promissory notes, security agreements, and personal guarantees to Stellar. Plaintiff David Arnold, Wavetronix's CEO, signed the notes.

Wavetronix paints itself as a victim – not a beneficiary – of DBSI's alleged fraud. In Wavetronix's version, the DBSI insiders set up Stellar as a straw company to conduct their tax shelter business, ostensibly to Wavetronix, and then created bogus notes, years after the fact, to document these so-called "loans" from Stellar to Wavetronix. Wavetronix maintains that at first it did not know the DBSI insiders had created these bogus loans. But eventually the insiders purportedly bullied Dr. Arnold into signing the retroactive notes, which he was told would never be enforced. Dr. Arnold apparently had no authority under the Operating Agreement to execute the notes because transactions with an affiliate required consent of the Wavetronix board after full disclosure. Wavetronix further alleges that the DBSI Insiders planned to use the invested funds to eventually take over Wavetronix through tax fraud and the bogus debt.

On May 17, 2012, Wavetronix filed the Complaint in this matter, alleging RICO violations against the DBSI Insiders. The violations include conspiracy allegations. The individuals named in the complaint as DBSI Insiders include John Foster and Walter Mott. Now Defendants Foster and Mott seek a more definite statement regarding their individual actions.

## LEGAL STANDARD

Rule 12(e) allows a party to move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). A court's Rule 12(e) analysis

is also informed by whether a plaintiff's complaint complies with Rule 8(a) – whether the Complaint pleads "a short statement of the elements of his claims, identifying the transactions or occurrences giving rise to the claim and elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000); *see also Hearne v. Welch & Allan*, 2006 WL 22184, at *2 (D. Idaho Jan. 4, 2006) ("[T]o determine whether Defendants are entitled to a more definite statement of the complaint...the Court must address whether Plaintiff's Complaint complies with Rule 8(a)"). Additionally when a complaint alleges fraud or mistake the Court must consider whether the Complaint satisfies the heightened pleading standard of Rule 9(b) which requires the circumstances constituting the fraud or mistake to be pleaded with particularity. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). Those allegations must be specific enough to give "notice of the particular misconduct which is alleged to constitute the fraud charged." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)).

Motions for a more definite statement are not favored by the courts since pleadings are only required to fairly notify the opposing party of the nature of the claim. *A.G. Edwards & Sons, Inc. v. Smith*, 736 F.Supp. 1030, 1032 (D. Az. 1989). A motion is only proper when a party is unable to determine the issues he must meet; it should not be used to test an opponent's case. *Id*.

## ANALYSIS

Defendants Foster and Mott move pursuant to Federal Rule of Civil Procedure 12(e) for a more definite statement of the Plaintiffs' claims. Specifically, they argue that

the Plaintiffs do not differentiate between the conduct of the many defendants and do not attribute specific acts to Mr. Foster and Mr. Mott during the period of 2006 to 2012. As required by Rule 12(e), Defendants Foster and Mott specify in their motion that the primary defect in the Complaint is a failure to meet Rule 9(b) pleading standards because it does not specifically allege that the Defendants individually engaged in fraudulent conduct or what role they each played in the RICO conspiracy. *Defs. Motion* at 3-4, Dkt. 25. They contend that they cannot reasonably respond without knowing what particular fraudulent misconduct is alleged against each of them. *Defs. Reply* at 3, Dkt. 53.

First and foremost, a complaint must put a defendant on fair notice regarding the nature of the claim against him and the demand for the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 574 (2007). Accordingly, Rule 12(e) has a specific and limited purpose and is only used when a complaint fails to meet the minimal pleading standards which will put the defendant fairly on notice. F.R.C.P. 12(e). It is a tool that a party may employ when a complaint is so general that the defendant cannot reasonably prepare the required response. *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). Thus, Rule 12(e) is focused on the pleading and not the merits of any claim; it only analyzes whether the plaintiff has met the minimal pleading standards so that a defendant may reasonably answer the complaint.

Those minimal pleading standards are informed not only by Rule 8(a), but also by Rule 9(b) when a complaint alleges fraud including claims of civil RICO violations. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). However the scope of Rule 9(b)'s role is not clearly defined when determining the minimal pleading

requirement to survive a motion for a more definite statement. Rule 9(b) standards are referred to as both "pleading standards" and "particularly requirements" which places it in limbo between a minimal pleading standard such as Rule 8(a) and a failure to state a claim under Rule 12(b)(6). *See Moore v. Kayport Package Exp., Inc.* 885 F.2d 531, 541 (9th Cir. 1989) (referring to the requirements that Rule 9(b) places on the "pleader" and to the particularity requirements of Rule 9(b)). Indeed a failure to meet the standards of Rule 9(b) has been equated with a failure to satisfy Rule 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Yet, it has also been treated as a motion for a more definite statement. *Harris Trust & Sav. Bank v. GMAC Bus. Credit, LLC.*, 2002 WL 1553435 (N.D. Ill. 2002). Although a motion challenging sufficiency of a pleading under Rule 9(b) may stand alone or be appropriately considered in a Rule 12(b)(6) motion, it also has a place in a Rule 12(e) analysis.

 Many of the purposes behind Rule 9(b) are aligned to the underlying notice purposes of a complaint and Rule 8(a). Specifically, it provides defendants with "adequate notice" to defend against the allegations. *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995). Additionally, allegations of fraud in a complaint have to be specific enough that the defendant knows the "particular misconduct" of which he is accused because otherwise all that the defendant can do is deny doing anything wrong. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, the Ninth Circuit applies Rule 9(b) to require the pleading to allege specific fraudulent conduct so that the "defendant can prepare an adequate answer." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Ultimately, Rule 9(b) informs the determination of whether a complaint

alleging civil fraudulent RICO violations is definite enough that a defendant will be able to reasonably answer those allegations.

Allegations of participation in a civil RICO conspiracy based on fraud must also be specific enough to allow a defendant to defend against his inclusion in the conspiracy. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007). Although an overt act is not required for an individual to violate RICO's prohibition against a joining a conspiracy, liability for participation in conspiracy does require that an individual used "words" or "actions" or that his activities were interdependent with those of other conspirators. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774-775 (9th Cir. 2002). There must be something the defendant did or said that can imply he agreed to the conspiracy. *Id*. Thus, a prima facie case against an individual for participation in a RICO conspiracy does require a showing of some kind of words, actions, or other activities that imply a link between individual and the larger fraudulent scheme. *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1562 (1st Cir. 1994).

Although there is no requirement that a complaint allege "every detail in the execution of [a] conspiracy" because conspirators "may be performing different tasks" to accomplish the fraudulent purpose, each defendant must be individually informed of his alleged role in the scheme. *Swartz*, 476 F.3d at 764. Similarly, a pleading that summarily refers to multiple defendants with a broad term such as "co-conspirators" makes it difficult for "individual defendants to frame a responsive pleading" if it is unclear whether or not they are part of the co-conspirators. *Natomas Gardens Inv. Group LLC v. Sinadinos*, 2009 WL 1363382 (E.D. Ca. 2009).

Consequently, "a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz,* 467 F.3d at 765 (quoting *Moore v. Kayport package Express, Inc.*, 885 F.2d 531, 541). Therefore, a complaint that merely asserts general allegations against the conspirators as a whole does not provide fair notice to the individual defendants of the specific conduct or role which links him to the larger conspiracy. *Id*. In sum, the complaint on its face must allege the defendants engaged in a RICO conspiracy and their respective roles in that conspiracy.

In this case, the Complaint is 99 pages in length containing 343 allegations. Many, if not most, allegations refer only to "the defendants" or "DBSI Insiders." Plaintiffs contend that attributing nearly all allegations of misconduct to the DBSI Insiders as a whole is appropriate because a member of a conspiracy is liable for the conspiracy as a whole. *Pls. Resp.* at 14, Dkt. 49. They framed the Complaint accordingly.

Very few allegations individually name Defendant John Foster or Defendant Walter Mott. Specifically, only two of the allegations in the Complaint refer to Mr. Mott: ¶ 23 (asserting his domicile), ¶ 26 (naming him as a DBSI Insider). Regarding Defendant John Foster, the following allegations refer to him: ¶ 18 (asserting his domicile), ¶ 26 (naming him as a DBSI Insider), ¶ 75, ¶ 76, ¶ 77, ¶ 102, ¶ 103, ¶ 104 (alleging he was President of Stellar and during 2003 he "demanded" execution of a promissory note that was never signed by the Plaintiffs). Hence the inquiry here is whether these allegations are specific enough to give each of these defendants fair notice of the grounds of the conspiracy claims against him.

First, regarding Defendant Walter Mott, the Complaint contains no allegations of acts, activities, or words that made him a DBSI Insider. Thus, the Complaint only states he is an insider, but it does not link any factual allegations to the conclusion that he participated in the conspiracy; it fails to specify what he said or did that made him a DBSI Insider. Consequently without more, the only response that Mr. Mott would be able to give is to merely deny being a DBSI Insider.

Ultimately the general, bare allegation that Mr. Mott was a DBSI Insider does not give him sufficient notice of the factual basis for any alleged fraudulent conduct committed by him, his inclusion in the conspiracy, or his role in the conspiracy. Therefore, the Motion for a More Definite Statement with respect to Defendant Walter Mott is granted. However, it does appear from the Plaintiffs' Response that they may have specific facts and reasons for naming Mr. Mott as a DBSI Insider. Accordingly, the Plaintiffs will have leave to amend the complaint as against Mr. Mott to include the factual basis for his inclusion as a DBSI Insider so that Mr. Mott may frame a reasonable answer to those allegations.

Next, regarding Defendant John Foster, the Complaint has at least a few allegations that identify his specific conduct and activities. The allegations establish Mr. Foster's involvement with Stellar as well as alleging his demand for a promissory note be executed on behalf of Plaintiff Wavetronix. *Compl.* ¶ 75, ¶ 76, ¶ 77, ¶ 102, ¶ 103, ¶ 104, Dkt. 1. Although there are no allegations of specific wrong-doing or involvement by Defendant Foster between 2006 and 2010, the allegations specifically addressing Mr. Foster's activities are sufficient to give him adequate notice of the specific conduct

linking him to the larger and longer scheme. Hence, the Complaint is specific enough to meet the minimal pleading standards of Rules 8(a) and 9(b) and allow Mr. Foster to frame an answer to those allegations. Notably, from Defendants' briefing, Mr. Foster does appear prepared to respond to those allegations. *Defs'. Reply* at 2, Dkt. 53. Therefore, the Motion for a More Definite Statement is denied with regard to Defendant John Foster. The Defendant is directed to answer the Complaint.

## ORDER

IT IS ORDERED that Defendant Foster and Defendant Mott's Motion for a More Definite Statement (Dkt. 24) is **GRANTED** in part regarding Defendant Mott and **DENIED** in part regarding Defendant Foster.



DATED: March 25, 2013

B. Lynn Winmill
Chief Judge
United States District Court