UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAVETRONIX LLC, an Idaho limited liability company; David Arnold; and Michael Jensen,<br><br>        Plaintiffs,<br>  v.<br><br>Douglas Swenson, Conrad Myers, individually but not in his capacity as Trustee of the DBSI Liquidating Trust; John D. Foster, Thomas Var Reeve, Charles Hassard, Paul Judge, Gary Bringhurst, Walter Mott, Jeremy Swenson, John Mayeron, William Rich, and John Does 1 through 20,<br>              Defendants. | Case No. 4:12-cv-00244-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.     INTRODUCTION

The Court has before it a motion for sanctions filed by Defendants Conrad Myers and William Rich (Dkt. 11). While Plaintiffs voluntarily dismissed their Complaint, Defendants now seek sanctions against Plaintiffs David Arnold and Michael Jensen, in addition to their attorney, Blake S. Atkin. For the reasons set forth below, the Court will grant the motion.

## II.     BACKGROUND

This case stems from the collapse of DBSI, Inc., a sprawling real estate investment empire. DBSI was comprised of hundreds of corporations and properties, but was

controlled and successfully ran by Defendant Douglas Swenson and his "cabal of insiders" for many years. In 2008, during the midst of the economic downturn, various DBSI entities filed for bankruptcy in the District of Delaware. A plan of reorganization was confirmed in October of 2010. The reorganization plan ("Plan") created four trusts – the DBSI Liquidating Trust, the DBSI Real Estate Liquidating Trust, the DBSI Estate Litigation Trust, and the DBSI Private Actions Trust – and called for the appointment of a trustee for each.  Defendant Conrad Myers was appointed as the Liquidating Trustee for the DBSI Liquidating Trust.  Defendant William Rich served as one of Myers' professional advisors.

### 1. Resulting Litigation

Immediately following the Confirmation of the Plan, on November 5, 2010, the Trustee of the DBSI Estate Litigation Trust and the DBSI Private Actions Trust, James Zazzali, filed a RICO claim against Swenson and the other officers or directors of various DBSI Companies (collectively, "DBSI Insiders"). Zazzali's RICO complaint is massive. It sets forth in painstaking detail the nature of a fraudulent scheme used to "bilk" investors, which allegedly began to infect DBSI in approximately 2004.  Stated in the simplest terms possible, Zazzali's complaint alleges that DBSI became detached from "any rational economic moorings, and ultimately became nothing more than the instrument of the Insiders' elaborate pyramid or 'Ponzi' scheme to defraud Investors." *Litigation Trustee's RICO Complaint*, Case No. 1:12-cv-00224-EJL-MHW, ¶ 33, Dkt. 1. Accepting the allegations of the complaint as true, it does appear that aspects of DBSI's

investment model did resemble a Ponzi scheme, in that DBSI purportedly paid off old investors by raising money through new ones.

According to Myers and Rich, Plaintiff Wavetronix LLC was one of several technology development companies that benefited from funds bilked from DBSI's investors. From 2001 through 2006, Wavetronix borrowed more than $21 million dollars from Stellar Technologies, LLC, a DBSI affiliate and Idaho-based company that invested in technology-oriented startup companies. The loans, which were accomplished through transfers to Wavetronix from various DBSI companies, were memorialized through promissory notes, security agreements, and personal guarantees made out to Stellar. Plaintiff David Arnold, Wavetronix's CEO, signed the notes.

Wavetronix paints itself as a victim – rather than a beneficiary – of DBSI's alleged fraud. In Wavetronix's version, the DBSI Insiders set up Stellar as a straw company to conduct their tax shelter business, and then created bogus notes, years after the fact, to document these so-called "loans" from Stellar to Wavetronix. Wavetronix maintains that at first it did not know that the DBSI Insiders had created these bogus loans; but eventually, they purportedly bullied Dr. Arnold into signing the retroactive notes, which he was told would never be enforced. Dr. Arnold apparently had no authority under Wavetronix's operating agreement to execute the notes because transactions with an affiliate required consent of the Wavetronix board after full disclosure. Wavetronix maintains that no one – neither borrower nor lender – expected these notes to be repaid. Instead, alleges Wavetronix, DBSI planned to use the invested funds to eventually take over Wavetronix through tax fraud and the bogus debt.

### 2. DBSI Bankruptcy

Before DBSI could leverage the notes and their investment in Wavetronix to wrest control of the company, the economic crunch of 2007-2008 forced DBSI and its affiliate companies into bankruptcy in early November 2008. Two years later, on October 26, 2010, the Bankruptcy Court entered a Confirmation Order confirming the Plan in the Chapter 11 cases.

As the Liquidating Trustee, Myers is vested with the rights, powers, and benefits to liquidate and convert the trust assets to cash. *See Plan*, Art. VI (M)(1)(f). To allow the Liquidating Trustee to perform this function and properly administer the trust without distraction, impediment or disruption, the Plan, Trust Agreement, and Confirmation Order protect the Liquidating Trustee from lawsuits. The Plan enjoins "Holders of Claims against or Interests in a Plan Debtor" from "commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party," which is defined to include the Liquidating Trust, the Liquidating Trustee, and his professional advisors. Plan, Art. XI (E) ("Plan Injunction"). Likewise, the Plan protects "Exculpated Parties" – which is also defined to include the Liquidating Trustee and his professional advisors – from "any liability for . . . any claim, cause of action or liability . . . to any other party . . . for any act or omission that occurred during the Chapter 11 Cases . . . and/or the property to be distributed under the Plan or the Trust . . . ." *See Plan*, Art. XI (G). In addition, the Trust Agreement expressly protects the Liquidating Trustee and his professional advisors from personal liability. *See* Trust Agmt., § 8.3 ("No recourse shall ever be had, directly or indirectly, against the

Liquidating Trustee personally, or any . . . professional retained in accordance with the terms of this Agreement or the Plan . . . .")

### 3. Defendants' Motion for Sanctions

On May 17, 2012, Wavetronix filed the Complaint in this matter, alleging RICO violations against the DBSI Insiders. *Supp. Dec.* (Dkt. 14, ¶ 3). In addition, the Complaint included claims against Myers in his personal capacity "but not in his capacity as Trustee of the DBSI Liquidating Trust," and against Myers' professional advisor, William Rich. (Dkt. 11). Almost a week later, Wavetronix filed a Motion for an Order Granting Permission to Bring a Judicial Action Against Conrad Myers as Liquidating Trustee in his Official Capacity in the Delaware Bankruptcy Court. *See Criswell Dec.* (Dkt. 40-1, ¶ 4). This motion was ultimately denied on August 2, 2012. *Supp. Dec.* (Dkt 14, Ex. B). Additionally, the Bankruptcy Court ordered Wavetronix to withdraw with prejudice its Complaint in this Court. *Id.* Wavetronix has appealed this decision. *Supp. Dec.* (Dkt. 14, ¶ 14). On August 3, 2012, Wavetronix dismissed its Complaint filed in this Court, without prejudice. (Dkt. 12).

With regard to the Defendants' pending Motion for Sanctions, on July 3, 2012, counsel for Defendants served Blake Atkin, counsel for Wavetronix, a letter informing him that the filing of the Complaint in this Court likely violated Rule 11. *Supp. Dec.* (Dkt. 14, ¶ 7). Defendants included a draft motion for sanctions with the accompanying letter. *Id.* Wavetronix neither responded to the letter, nor dismissed its Complaint within the twenty-one day "safe harbor" provided in Rule 11. *Id.* at ¶ 8.

On July 31, 2012, Defendants filed the pending Motion for Sanctions. (Dkt. 11). Pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers, Defendants Myers and Rich ask this Court to impose sanctions against Plaintiffs David Arnold, Michael Jensen, and their attorney Blake Atkin.

### III.   RULE 11 SANCTIONS

Defendants argue that the Complaint is frivolous and wholly lacking in both legal basis and factual foundation. As such, Defendants assert, Rule 11 sanctions should be imposed. (Dkt. 11). Wavetronix objects and responds in part that Defendants' Motion for Sanctions itself is sanctionable under Rule 11. *Resp.* (Dkt. 32, p. 51).

### A. Standard of Law

Rule 11 sanctions may be imposed "when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought with an improper purpose." *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994). A filing is frivolous if it is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.1990) (en banc). The standard is objective; it requires no bad faith or an otherwise culpable state of mind. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46-48, (1991); *Townsend,* 929 F.2d at 1362. The question is whether the filing is "unreasonable when viewed from the perspective of a 'competent attorney admitted to practice before the district court.'" *Lapin v. U.S.,* 118 F.R.D. 632, 635 (D.Hawai'i 1987) (*citing Zaldivar v. Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986) (*abrogated on other grounds by Cooter & Gell v. Hatmarx Corp.,* 496 U.S. 388 (1990)).

Finally, Rule 11 sanctions may be imposed even after a plaintiff voluntarily dismisses its complaint. *Cooter & Gell v. Hatmarx Corp.,* 496 U.S. 388,398 (1990).

**B. Analysis**

Myers and Rich contend that Wavetronix's allegations are without factual or legal basis because they are insulated from liability for acts taken in their official capacities under the Plan, Confirmation Order, and Trust Agreement. (Dkt. 11, p. 16). The Bankruptcy Court has confirmed that Wavetronix's Complaint violated the Plan Injunction, and that Wavetronix was in contempt of its Confirmation Order. (Dkt. 40-5, p. 9).

While the Bankruptcy Court's Memorandum Opinion was issued after Wavetronix filed its Complaint in this Court, a reasonable inquiry prior to filing would have led Wavetronix to come to the same conclusion that the Bankruptcy Court ultimately did. The Plan's language is plain: Holders of Claims – which includes Wavetronix – are enjoined from "commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party," which is defined to include the Liquidating Trust, the Liquidating Trustee, and his professional advisors. Plan, Art. XI (E).

Defendants are correct in asserting that the Complaint not only violates express terms of the Plan, but was also legally baseless under well-established law. As a general rule, "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *In re Crown Vantage*, 421 F.3d 963,

970 (9th Cir. 2005).This principle stems from the *Barton* doctrine, established in *Barton v. Barbour*, where the Supreme Court held that before a suit can be brought against a court-appointed receiver, leave from the appointing court must be obtained. 104 U.S. 126 (1881). The *Barton* doctrine applies not just to bankruptcy trustees, but to liquidating trustees as well. *In re Crown Vantage*, 421 F.3d at 973.

Wavetronix unpersuasively attempted to plead around the *Barton* doctrine by suing Myers in his "personal capacity and not in his official capacity as the trustee of the Liquidating Trust." *Complaint* (Dkt. 1, ¶ 16). However, merely characterizing the suit as "personal" does not change the fact that the essence of each of the allegations in the Complaint revolve around decisions that Myers made in his official capacity as Liquidating Trustee. And, in fact, Wavetronix itself cannot dispute that the allegations made against Myers in his "personal capacity" are one and the same with those it sought to bring against Myers in his official capacity. To confirm this, one must only compare Wavetronix's Complaint to its Memorandum of Law in Support of Plaintiff's Motion for an Order Granting Permission to Bring a Judicial Action Against Conrad Myers, as Liquidating Trustee in his Official Capacity (Dkt. 3-2, Exhibit A, p. 11-12) – a Motion that was ultimately denied by the Bankruptcy Court. The allegations in each are the same. Both allege that Myers and Rich continued the fraudulent business practices of Stellar; committed perjury, wire fraud, money laundering, and tax fraud; and wrongfully sought to enforce the promissory notes. (Dkt. 3-2, Exhibit A, pp. 11-12, 15-16) and *Complaint* (Dkt. 1, ¶ ¶ 3, 201, 210).

Wavetronix apparently tries to explain this away, stating: "[u]nless this Complaint is amended to add Myers in his official capacity, allegations that apply only to Myers in his official capacity should not be construed as an attempt to state a claim against Myers in his official capacity, but as background for other allegations of the Complaint." *Complaint* (Dkt. 1, n. 5). This is nonsensical—the *only* allegations in the Complaint against Myers *are* those against him in his official capacity.   If they are construed as merely "background," there are no substantive allegations left.

Wavetronix further contends that the limited statutory exception to the *Barton* doctrine, found at 28 U.S.C. § 959(a), applies and, thus, it was not required to seek leave from the bankruptcy court before suing Myers in his official capacity. *Resp.* (Dkt. 32, p. 17-24). This narrow exception applies only if the Liquidating Trustee is "operating the business" – it does not apply to suits against trustees for liquidating the bankruptcy estate. *In re Crown Vantage*, 421 F.3d at 971-972. To make the point clearer, "actions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate." *Id*. (citing *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004)).

Wavetronix asserts that Myers and Rich operated the business of Stellar in two ways: 1) when Myers, "rather than liquidating the Stellar interest [. . .] stated his intention to hold that interest until [. . .] the object of the Stellar conspiracy [. . .] occurs"; and 2) by continuing to operate Stellar as an illegal tax shelter. *Response* (Dkt. 32, p. 18). Wavetronix's assertions are all fluff and no substance. Both of these allegations concern actions taken in the administration of property – specifically, the Stellar entity – under

order of the Bankruptcy Court. As Defendants point out, Myers, as Liquidating Trustee, is well within his right to hold the Liquidating Trust's equity interest in Stellar. After all, the Plan provides that "[t]he Trustee, in his/her reasonable business judgment . . . shall liquidate and convert to Cash the Trust Assets . . . unless the Trustee determines, in his sole discretion, that retention of any or all Trust Assets is likely to result in increased value of such Trust Asset(s) and is otherwise in the best interests of the Holders of Beneficial Interests." (Dkt. 11, p. 19) citing the Plan, § VI(M)(f)(ii). Wavetronix failed to allege a single instance of conduct that would qualify as "operating the business"; rather, Myers was exercising his discretion in attempting to liquidate the assets of the estate. And as the Ninth Circuit has noted, "[t]his is precisely the type of activity that the *Barton* doctrine was designed to protect." *In re Crown Vantage*, 421 F.3d at 972.

Because Wavetronix filed its Complaint in contravention of the plain language of the Plan, and because in doing so it attempted to artfully plead its way around well-established law, the Court will grant Defendants' motion for sanctions pursuant to its authority under Rule 11.

## VI. SANCTIONS PURSUANT TO 28 U.S.C. § 1927

### A.  Standard of Law

Section 1927 provides: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Additionally, "[a] district court may choose to impose sanctions under both Rule 11 and section 1927; the court's findings under Rule 11 have

no legally binding effect upon that court's ability to impose sanctions under section 1927." *Blumberg v. Gates*, 152 F. App'x 652, 653 (9th Cir. 2005). However, "[o]nly conduct rising to the level of maliciousness, vexatiousness or bad faith warrant section 1927 sanctions; negligence – even gross negligence – is not enough." *Id*. at 654. Bad faith exists when an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim *for the purpose of harassing an opponent*." *Id*. (internal citations omitted). To impose sanctions under section 1927, a district court must point to specific evidence of maliciousness, vexatiousness, or bad faith. *Id*.

### B.  Analysis

Defendants assert that the Complaint was filed in bad faith because "the 'personal capacity' nature of the Complaint is a pure fiction" that Wavetronix would not pursue if the Bankruptcy Court had granted it leave to sue Myers in his official capacity. (Dkt. 11, p. 21). Defendants conclude that because of "the lack of any legal or factual basis for the filing of the Complaint, Plaintiffs have clearly brought these claims for an improper, unreasonable and vexatious purpose . . . ." *Id*. at 22. Wavetronix makes no mention of section 1927, and offers no response to Defendants' contention that the Complaint was filed in bad faith. *See Mem. in Opposition of Motion for Sanctions* (Dkt. 32).

Despite Wavetronix's non-response, Defendants fail to point to any conduct on the part of Plaintiffs' counsel that would rise to the level of maliciousness, vexatiousness, or bad faith. Even taking as true Defendants' contention – that Wavetronix had no intention of pursuing claims against Myers in his personal capacity – it does not necessarily follow that Plaintiffs' counsel engaged in malicious or vexatious behavior that was designed to

harass the Defendants. Without more, mere conclusions that counsel's conduct is vexatious is insufficient to impose sanctions pursuant to 28 U.S.C. § 1927. Therefore, Defendants' motion for sanctions under section 1927 is denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

IT IS HEREBY ORDERED that the motion for sanctions (Dkt. 11) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks sanctions pursuant to Rule 11. It is denied to the extent it seeks sanctions pursuant to 28 U.S.C. § 1927.

IT IS FURTHER ORDERED that the parties submit briefing within 14 days from entry of this decision regarding: (1) whether monetary sanctions should be imposed against both Plaintiffs' and their counsel, or only against counsel; and (2) the appropriate amount and nature of that sanction (e.g., a fine payable to the court, a reprimand, or reasonable attorneys' fees).[1]

DATED: March 29, 2013

B. Lynn Winmill
Chief Judge
United States District Court

---

[1] According to Wright and Miller. "[t]he 1993 revision [to Rule 11] makes it clear that the main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." *Wright & Miller*, Federal Practice and Procedure, Civil 3d § 1336.3 (3d. ed. 2004).  The Court asks the parties to keep this in mind when proposing a remedy.